FILED
IN MY OFFICE

AUG 1 0 2018

COUNTY & CIRCUIT CLERK
SHELLY DOWNING
BY_____7.37_____D.C.

**IN THE CIRCUIT COURT OF IZARD COUNTY, ARKANSAS**

_____DIVISION

IZARD COUNTY MEDICAL CENTER, LLC            **PLAINTIFF**

v.                   **Case No.** 33CV-18-102

COMPUTER PROGRAMS AND SYSTEMS, INC.;
HEALTHLAND, INC                    **DEFENDANTS**

## VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF

Comes Now, Izard County Medical Center, LLC ("ICMC"), for its Verified Complaint for

Emergency Injunctive Relief states:

### PARTIES, JURISDICTION AND VENUE

1.      ICMC is a Delaware Limited Liability Company that owns and operates a

critical access hospital located in Calico Rock, Arkansas.  ICMC is the successor entity to

the entity that purchased the assets of Community Medical Center of Izard County

("CMCIC") on July 3, 2017.

2.      Defendant Computer Programs and Systems, Inc. ("CPSI") is a Delaware

Corporation, registered to do business in the State of Arkansas, that provides technology

solutions to healthcare providers in rural communities and post-acute care facilities

across the nation.

3.      Defendant Healthland, Inc. ("Healthland") is a Minnesota corporation that

provides electronic medical record ("EMR") management software and services for

community healthcare providers throughout the State of Arkansas.  Healthland is a

wholly-owned subsidiary of CPSI.

1

**EXHIBIT
A**

4.    The Court has subject matter jurisdiction under Amendment 80 to the Constitution of Arkansas. This Court has personal jurisdiction over the Defendants under A.C.A. § 16-4-101(B). Venue is proper in Izard County, under A.C.A. § 16-60-101.

## BACKGROUND INFORMATION

5.    ICMC is licensed to maintain and operate a critical access hospital in Izard County, Arkansas. ICMC is the sole hospital in Izard County and no other hospital is located within 25 miles of ICMC. ICMC provides the majority of care to the residents of Izard County and the surrounding areas. In general, Izard County is a rural community with limited access to healthcare in general.

6.    The "critical access hospital" designation was created by Congress through the Balanced Budget Act of 1997 in response to a string of rural hospital closures during the 1980s and early 1990s. This designation is designed to reduce the financial vulnerability of rural hospitals and improve access to healthcare by keeping essential services in rural communities. Indeed, ICMC is the sole provider of emergency care in the Izard County community and the location of many of the daily needs of healthcare for the same community.

7.    As part of the American Recovery and Reinvestment Act of 2009, all public and private healthcare providers were required to adopt and demonstrate "meaningful use" of electronic medical records ("EMR") by January 1, 2014, in order to maintain their existing Medicaid and Medicare reimbursement.

8.    To ensure compliance with the federal requirements, CMCIC entered into a Hosted License Agreement with Healthland on or about July 31, 2012, to provide for EMR services ("Agreement"). The Agreement is attached hereto as Exhibit A and incorporated herein by reference.

9.      Pursuant to Schedule B of the Agreement, Healthland provides software related to a variety of core functions of ICMC including, but not limited to: patient registration, patient accounting, health information management, chart management, clinical documentation, pharmacy management, laboratory management and diagnostic imaging

10.     Pursuant to Section D.2. of the Hosted License Agreement, Healthland agreed to provide Maintenance Services on an annual basis unless one of the parties provided at least one hundred eighty (180) days notice of an intent to terminate the Maintenance Agreement.

11.     As part of the Maintenance Services, Healthland agreed to provide: (1) updates to Software; (2) error correction and/or workarounds for reported errors, malfunctions, or defects in the Software; and (3) 24/7 access to toll-free Software Support Hotline for error correction and/or workarounds.

12.     Despite the contractual obligation to provide Maintenance Services, Healthland has provided no maintenance or updates to the software utilized by ICMC pursuant to the Hosted License Agreement since October 2017.

13.     The Agreement further licenses and provides for the maintenance and hosting of ICMC's use of the Centriq software system. Centriq manages EMR and a host of other patient care services.

14.     Pursuant to Section D.4. of the Hosted License Agreement, Healthland agreed to provide Hosting Services for an initial period of sixty (60) months with automatic renewals for additional twelve (12) month periods unless one of the parties provided written notice at least sixty (60) days in advance of an intent not to renew.

15.     The purpose of the Hosting Services is to provide a platform for the software supplied by Healthland to be available to ICMC on a twenty-four hour per day, seven day a week basis. Without such access, ICMC would not be able to properly operate a hospital facility any longer or remain in compliance with federal EMR requirements.

16.     The majority, if not all, patient data for services rendered at CMCIC has been entered into the Centriq software.

17.     On or about August 2, 2018, Scott Schneider, Executive Vice President of CPSI, provided notice that Healthland would terminate the Agreement at 5:00PM on Friday, August 10, 2018, unless CPSI received a wire transfer of $606,406.54. The letter from Mr. Schneider is attached hereto as Exhibit B and incorporated herein by reference.

18.     Despite the requirement that Healthland provide Hosting Services, the Defendants have indicated the intent to terminate such Hosting Services with less than ten (10) days' notice.

19.     This notice is in violation of the contractual obligation to seek dispute resolution. Pursuant to Section C of Contract Attachment 2 of the Hosted License Agreement, the parties agreed "to continue performing their other obligations under this Agreement while the dispute is being resolved...unless the Parties mutually agree to cease provision of maintenance services or the Agreement is terminated."

20.     Mr. Schneider's claims that ICMC has been "nonresponsive." The parties communicated as recently as July 27, 2018 via email regarding the balance owed by ICMC to Healthland.

21.     Further, ICMC has regularly made payments to CPSI including the following:

    a.   June 29, 2018- $10,000

4

    b.  May 25, 2018- $10,000

    c.  May 11, 2018- $10,000

    d.  April 20, 2018- $10,000

    e.  April 6, 2018- $10,000

    f.  March 23, 2018- $10,000

    g.  March 9, 2018- $10,000

    h.  February 23, 2018- $10,000

    i.  February 13, 2018- $10,000

    j.  January 19, 2018- $10,000

    k.  January 5, 2018- $10,000

22.    In total, ICMC has paid Defendants $110,000 in 2018 and no less than $420,000 since July 8, 2016.

23.    Pursuant to Exhibit B, Healthland would discontinue these services on August 10, 2018 at 5:00 PM. This termination would be in breach of the Hosted License Agreement requirement that a party provide at least sixty (60) days prior written notice of termination of the Hosting Services.

24.    CPSI's threat to terminate services could cause detrimental harm to ICMC as well as the Izard County community as a whole. Without a functioning EMR system the facility cannot function properly and cannot serve patients effectively.

25.    Restricting ICMC's services would cause residents that need medical services to travel at minimum twenty-five miles to receive medical attention, this could cause irreparable harm to ICMC and the residents of Izard County.

**COUNT I**
**REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION**

26.     Paragraphs 1-25 are incorporated by reference as if fully set forth herein.

27.     ICMC seeks a temporary restraining order and a preliminary injunction because absent same, ICMC will suffer irreparable harm and ICMC lacks adequate remedy at law to compensate ICMC for Defendants' actions in potentially terminating services on August 10, 2018 without proper notice.

28.     ICMC will suffer grave reputational harm due to significant disruption in the patient care of the residents of Izard County and neighboring areas. Reputational harms will also impact ICMC's relationship with Izard County community and ICMC's other contractual partners. ICMC has a significant human interest in ensuring that the residents of Izard County and neighboring communities can receive medical services.

29.     The residents of Izard County that will need medical attention after August 10, 2018, would be irreparably harmed in that they would have to travel great distances to receive emergency care.  Should a resident have to travel in excess of thirty minutes for a cardiac event, that could be the difference in life or death.

30.     Defendants have no corresponding risk. A temporary restraining order and injunction here would not halt their business activities, nor would it increase their financial burden. Further, Defendants have contractually agreed to continue to provide services in the event of a dispute.

31.     This extreme remedy is the result of Defendants' own actions. If Defendants had provided appropriate notice under the Agreement, ICMC could seek a new third party vendor to provide software services to eliminate issues with patient care and hospital operations.  Under no circumstances is it safe for patient care for an entity to terminate

6

an EMR system with less than ten (10) days' notice and without a substitute EMR system on the ready.

32.     ICMC has attempted to discuss this issue with Defendants, but to no avail.

33.     ICMC has demonstrated a likelihood of success on the merits as discussed above. ICMC is the sole hospital in the Izard County area and, thus, the main provider of emergency services.  ICMC and Healthland contracted for the provision of software services to assist in the operation of a hospital and patient care.  Should Healthland terminate the services provided pursuant to the Agreement without adequate notice, it would serve to irreparably harm ICMC and the community at large.

## COUNT II
## SPECIFIC PERFORMANCE

34.     Paragraphs 1-33 are incorporated by reference as if fully set forth herein.

35.     The Agreement specifically states that Hosting Services cannot be terminated unless a party provides written notice no less than sixty (60) days in advance of the end of term of an intent not to renew.

36.     The Agreement specifically states that Maintenance Services cannot be terminated unless a party provides written notice no less than one hundred eighty (180) days in advance of the proposed termination date.

37.     The Agreement specifically details a dispute resolution process in Contract Amendment 2 and includes the clause stating that each party is responsible for performance until the dispute can be resolved.

38.     CPSI's actions threatening to terminate services is in direct violation of the Agreement entered into by both parties on July 31, 2012 and would serve to irreparably harm ICMC.

7

39.     CPSI should be required to comply with the terms of the Agreement, and continue to provide services until any dispute revolving around breach of the contract can be resolved.

## COUNT III
## BREACH OF CONTRACT

40.     Paragraphs 1-39 are incorporated by reference as if fully set forth herein.

41.     Defendants have breached the Agreement by failing to provide maintenance services since October 2017.

42.     Defendants have breached the Agreement by failing to provide software updates since October 2017.

43.     Defendants have breached the Agreement by attempting to terminate the Maintenance Services with less than one hundred eighty (180) days' written notice.

44.     Defendants have breached the Agreement by attempting to terminate the Hosting Services with less than sixty (60) days' written notice prior to the end of the term of the Agreement.

45.     Defendants have breached the Agreement by indicating their intent not to continue their obligations under the Agreement, despite the contractual agreement by the parties that all duties will continue to be performed except by mutual agreement.

46.     As a result of Defendants' breach, ICMC has suffered damages due to its inability to create reports that would assist in generating income and managing patient care.

47.     Further, due to Defendants' breach, ICMC has suffered damages due to inefficiencies in ICMC's billing operations due to a lack of proper software updates.

48.     ICMC should be awarded its damages due to the breach by Defendants' of the Agreement including, but not limited to attorneys' fees, costs, and all other relief deemed just by the Court.

## COUNT IV
## UNJUST ENRICHMENT

49.     Paragraphs 1-48 are incorporated by reference as if fully set forth herein.

50.     ICMC conferred a financial benefit to Defendants by making payments of approximately $20,000 per month since March 2017. In total, ICMC has paid Defendants no less than $420,000 since July 8, 2016.

51.     Defendants have accepted each payment.

52.     ICMC reasonably expected for Defendants to continue to provide the Maintenance Services and Hosting Services as provided for in the Agreement.

53.     As a result, Defendants have unjustly retained the benefit of payment to the detriment of ICMC, violating the fundamental principles of justice, equity, and good conscience.

## COUNT V
## PROMISSORY ESTOPPEL

54.     Paragraphs 1-53 are incorporated by reference as if fully set forth herein.

55.     Defendants made certain promises and representations, including, without limitation, those promises and representations concerning the provision of Maintenance Services and Hosting Services under the Agreement.  Defendants intended for ICMC to rely on the said promises and representations.  Defendants have made clear their intention of no longer honoring its promises and representations.

56.     ICMC reasonably and foreseeably relied on the said promises and representations by, among other things, entering into the Agreement and providing

Defendants regular payments.  Further, ICMC did not seek out a different EMR vendor to provide services.

57.    Defendants failed to comply with their promises and representations to ICMC to ICMC's detriment.

58.    Injustice will result if Defendants' promises are not enforced and ICMC is not awarded injunctive relief against Defendants.

### PRAYER FOR RELIEF

59.    WHEREFORE, ICMC requests that this Court:

   a. Grant a temporary restraining order and injunctive relief against Defendants to prevent any stoppage of services pursuant to the Hosted License Agreement entered into July 31, 2012;

   b. Award ICMC damages, attorneys' fees, costs, and other sums for Defendants' breach of the Hosted License Agreement;

   c. All other relief this Court deems proper.

60.    ICMC demands a trial by jury.

I, Gabriel Mallard, state on oath that the above allegations are, on information and belief, true to the best of my knowledge.

Respectfully submitted,

MALLARD GARDNER, PLLC
1422 Scott Street
Little Rock, AR 72202
(501)850-8501
gabriel.mallard@mallardgardner.com
karey.gardner@mallardgardner.com

by:
Gabriel Mallard (2005130)
Karey Gardner (96078)
*Counsel for Plaintiff ICMC, LLC*
*d/b/a Izard County Medical Center,*
*LLC*